UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cr-00096-TWP-DML |
| | ) | |
| ANTONIO  PARTIDA-CHAVEZ, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant Antonio Partida-Chavez's ("Partida") Motion to Suppress.  (Filing No. 27.)  Partida is charged with violating 21 U.S.C. § 841, possession with the intent to distribute controlled substances, and 18 U.S.C. 922(g), possession of a firearm by an alien illegally in the United States.  (Filing No. 11.)  He asserts that the search and seizure of his residence was made without valid consent and violated the Fourth Amendment.  The Court held a hearing on Partida's Motion on September 13, 2016.  Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law.  For the reasons set forth below, the Motion to Suppress is **DENIED**.

## I.      BACKGROUND

On March 15, 2016, a state court magistrate issued an arrest warrant for Jesus Luna ("Luna"). (Gov. Exhibit 1.)  Luna was wanted for criminal recklessness committed with a deadly weapon and operating a vehicle while intoxicated. The arrest warrant listed 6331 West Ray Street, Indianapolis, Indiana as Luna's address.  *Id.*  On April 5, 2016, Indianapolis Metropolitan Police Department ("IMPD") officer, Dennis Wilkerson ("Officer Wilkerson"), learned of the arrest warrant for Luna at the Ray Street address.  After reviewing the arrest warrant, Officer Wilkerson

drove to 6331 West Ray Street and surveilled the area to see if Luna or any vehicles were present. Officer Wilkerson observed a red Jeep Cherokee parked near the residence. He then left and returned shortly thereafter, however, the jeep was no longer there. Officer Wilkerson continued to surveille the area to see if the jeep would return. When the jeep failed to return after several hours, Officer Wilkerson decided that he would check back the next day. The following day, on April 6, 2016, Officer Wilkerson again surveilled the residence and spotted the red Jeep Cherokee parked near the garage of the residence. At 9:27a.m., Officer Wilkerson printed the IMPD warrant report off of his computer reporting system which showed an active warrant for Luna and an address of 6331 West Ray Street. (Gov. Exhibit 2). He also ran a search in the National Crime Information Center ("NCIC") database and printed an information sheet which provided a description of Luna, indicated that Luna was a "wanted person" and warned that Luna was "armed and dangerous". (Gov. Exhibit 3.)

Approximately three minutes later, at 9:30a.m., Officer Wilkerson, Detective Michael Bragg ("Officer Bragg"), Detective Stephanie Humerickhouse ("Officer Humerickhouse"), and Officer Dennis Lowe ("Officer Lowe"), went to 6331 West Ray Street to execute the arrest warrant. Officers Humerickhouse, Bragg and Lowe were in full IMPD uniform. Officer Wilkerson was wearing plain clothes and a black vest that listed "POLICE" in white lettering. When the officers arrived at the address, Officer Wilkerson noticed surveillance cameras mounted to the front of the residence. Officer Wilkerson was concerned that whoever was inside, possibly Luna, could be watching and observing that officers were out front. Officer Lowe went to the rear of the residence to ensure that no one fled from the back door. The three remaining officers proceeded to the front door.

Officer Wilkerson knocked on the door and was met by Partida, who partially opened the door.  Officer Wilkerson asked Partida for his name, and Partida responded "Antonio." Officer Wilkerson informed Partida that he looking for Luna and had an arrest warrant that listed 6331 West Ray Street as Luna's address.[1]  Once the officers entered Partida's residence, Officer Bragg remained in the living room with Partida.   Officers Wilkerson and Humerickhouse began a protective sweep in search of Luna.  They first checked the bathroom and living room.  The officers then checked the master bedroom and observed a baby laying on the bed.  After clearing the southeast bedroom, and while walking through the east end of the residence, Officer Wilkerson smelled a strong odor of raw marijuana.  Officer Wilkerson opened the door to the north east bedroom and observed two large scales covered with marijuana residue, a large glass jar filled with marijuana, and a clear freezer bag filled with marijuana.  The officers swept the remainder of the residence in search of Luna, but Luna was not found.  Officer Wilkerson then informed Partida that he would be seeking a search warrant for the residence and other officers secured Partida pending the search warrant.

At 11:11a.m., Officer Wilkerson obtained a search warrant for 6331 West Ray Street from a state court magistrate with the Marion Superior Court.  After receiving the search warrant and returning to the residence, Officer Wilkerson read Partida his *Miranda* rights from an IMPD issued card and showed Partida the search warrant.  Partida stated that he understood his *Miranda* rights.

---

[1] There is conflicting testimony regarding Partida's subsequent actions.  The officers assert that Partida replied "OK" and then stepped aside, allowing them to enter the residence. To the contrary, Partida alleges that he informed the officers that Luna was his cousin and was incarcerated in Boone County, Kentucky.  Partida was aware that Luna was incarcerated in Boone County, Kentucky because Partida spoke on the telephone with Luna the previous night.  Partida contends that he stepped aside only when Officer Wilkerson began pushing the door open and that he never made a gesture intended as an invitation for officers to enter his home.  For their part, officers deny that Partida informed them that Luna was in jail when they entered the residence and contend that Partida first informed them that Luna was in the Boone County jail (which they assumed was in Boone County, Indiana) after they secured the search warrant for the residence.

Partida then informed Officer Wilkerson that he lives at the residence with his wife, Clarissa Villegas ("Villegas"), and their 3 month old son.  He stated that Luna is his cousin and was incarcerated in Boone County.  Officer Wilkerson asked if Villegas was aware of the marijuana in the bedroom.  Partida responded that Villegas was not aware of the marijuana, the north east bedroom door where the marijuana is stored remains locked, and that Villegas does not go in that room.  Officer Wilkerson then asked why the door was unlocked on that day and Partida responded that he did not wish to speak any further without a lawyer present.

After speaking with Partida, Officer Wilkerson began searching the residence.  During the second search, the officers recovered two scales and 181 pounds of marijuana (approximately 82 kilograms), as well as a Colt Government Model Series 80, 45 caliber pistol; a Springfield Amory, Model XD-40 .40 caliber pistol; a Marlin Model 60, .22 caliber rifle; and a JC Higgins Model 43, .22 caliber rifle.  (Filing No. 2 at 1.)  The officers also found a box that contained a yellow notepad with names, dollar amounts, dates, the term "skunk weed," along with nine banded stacks of money totaling $11,776.00, and several forms of identification for Partida, including a Mexico passport stating that Partida was born in Manzanillo, Colima, Mexico.  *Id*. at 5.

Villegas was interviewed by Agent Jensen with the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") and Special Agent Jason Rodriguez with Homeland Security Investigations ("HSI") prior to the search warrant being obtained.  *Id.* at 6.  Villegas admitted that there were several pistols in the home and that she observed Partida handle the firearms in the residence approximately two weeks prior.  *Id.*

## II.   DISCUSSION

Partida moves the Court to suppress the marijuana and all other evidence seized by IMPD officers, asserting that the officers violated the Fourth Amendment and did not have consent to

search his residence. Partida contends that the issues before the Court are: 1) whether the officers had authority to search his residence absent his consent, and 2) whether the officers had probable cause to enter his residence. The Court will address each issue in turn.

## A.     Fourth Amendment Violation

Partida argues that the initial search of his home was conducted without a valid search warrant, was conducted without his consent and thus violated his Fourth Amendment rights under the United States Constitution. (Filing No. 27). There is no dispute that the IMPD officers did not have a search warrant when they initially entered the home and conducted the protective sweep in search of Luna. The Fourth Amendment guarantees "the right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment prohibits a warrantless search unless the search falls under one of the recognized exceptions to the warrant requirements. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). One such exception to the warrant requirement applies "to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possess common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

Partida argues that he did not voluntarily consent to the officers entering his home to search for Luna. He relies on *Steagald v. United States*., 451 U.S. 204 (1981), when asserting that it is a violation of the Fourth Amendment for a law enforcement officer to search for a subject of an arrest warrant in the home of a third party without first obtaining a search warrant or consent. "Absent exigent circumstances or consent, a search warrant is required to enter and search a third

5

person's home for a fugitive named in an arrest warrant." *United States v. Patino*, 830 F.2d 1413, 1415 (7th Cir. 1987) (citing *Steagald*, 451 U.S. 204). "While an arrest warrant authorizes police officers to seize a suspect in a public place or in his home, it does not authorize them to enter the home of a third person where they believe the suspect may be staying." *Id.* In response, the Government asserts that Partida's reliance on *Steagald* is misplaced. The Government argues the facts in this case are distinguished from those in *Steagald*, because IMPD officers searched for Luna at Luna's residence, not in a third person's home. The Court agrees that *Steagald* does not apply under the circumstances in this case. The IMPD officers had a valid arrest warrant listing 6331 West Ray Street as Luna's residence. Additionally, during the hearing on the Motion to Suppress, Partida conceded that Luna resided at 6331 West Ray Street.

Partida argues, still, that the IMPD officers did not have explicit or implied consent to search his home, as required by the Fourth Amendment. The Government relies on *Payton v. New York*, 445 U.S. 573, 603 (1980), when responding that Partida's consent was not required for the officers to enter the residence. "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York,* 445 U.S. at 603; *see also United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009) (If the suspect resides at the address in question, however, officers need only an arrest warrant and a "reason to believe" that the individual is present at the time of their entry.); *Patino*, 830 F.2d at 1415; *United States v. Jones*, 696 F.2d 479, 486 (7th Cir. 1982). The Government argues persuasively that IMPD officers reasonably believed Luna was within the residence. During the hearing on the Motion to Suppress, Officer Wilkerson testified that he spotted a red Jeep Cherokee parked near the garage of the residence prior to attempting to execute the arrest warrant. The presence of the vehicle led Officer

Wilkerson to believe that Luna, the resident of the premises, would be at home. Officer Wilkerson also printed an IMPD warrant report within minutes of executing the arrest warrant and ran a search in the NCIC database, both of which showed an active arrest warrant for Luna at that address. The NCIC report indicated that Luna was possibly "armed and dangerous." Even absent Partida's consent, officers were allowed to enter the home on a limited bases to execute the arrest warrant.

The Government argues in the alternative that Partida gave implied consent to the officers when he said "okay," stepped to the side, and allowed the officers to enter. The Government relies on *United States v. Walls*, 225 F.3d 858 (7th Cir. 2000) and *United States v. Sabo*, 724 F.3d 891 (7th Cir. 2013), when asserting that consent is given where a defendant steps aside and allows officers to enter the residence. In response, Partida alleges that his case is distinguishable from *Walls* and *Sabo*. Partida argues that the defendants in *Walls* and *Sabo* stepped aside voluntarily and allowed the officers to enter. Partida asserts that he stepped aside involuntarily when Officer Wilkerson began pushing the door open. Additionally, Partida contends that the law enforcement officers in *Walls* and *Sabo*, unlike the IMPD officers, expressly or implicitly made it clear that they wished to enter the house. Because the Court finds that consent was not warranted due to the officers' limited authority to enter the residence and execute the arrest warrant, the Court need not address this issue.

**B.     Probable Cause**

Partida also argues that officers did not have probable cause to believe that Luna was within the residence. Partida asserts that he informed the officers that Luna was in jail in Boone County, Kentucky the moment the officers showed him the arrest warrant. Partida further contends that

the officers had the ability to quickly and easily verify the information with a simple phone call or computer check verify Luna's whereabouts before entering the residence.

In response, the Government asserts that Officer Wilkerson conducted due diligence by reviewing and printing the IMPD warrant report and running a search in the NCIC database minutes prior to entering the residence in search of Luna.  Even if officers had called or made another computer check upon arrival to the residence to determine whether the warrant was active, the result would have been the same.  On April 6, 2016, both the IMPD warrant report and the NCIC database showed an active warrant for Luna and listed 6331 West Ray Street as the service address.  Courts uniformly recognize that "NCIC printouts are reliable enough to form the basis of the reasonable belief [] needed to establish probable cause for arrest."  *United States v. McDonald*, 606 F.2d 552, 554 (5th Cir. 1979); *see also United States v. Martinez-Jimenez*, 464 F.3d 1205, 1210-11 (10th Cir. 2006); *United States v. Goetz*, 153 F. App'x 918, 920 (5th Cir. 2005); *United States v. Hines,* 564 F.2d 925, 927 (10th Cir. 1977); *United States v. Palmer*, 536 F.2d 1278, 1283 (9th Cir. 1976); *United States v. Godwin*, 522 F.2d 1135, 1136 (4th Cir. 1975). Assuming Partida had informed officers that Luna was in jail, it would be unreasonable to require officers to simply believe Partida's statement and leave the residence without first sweeping the premises.  It was perfectly reasonable for officers to proceed with entry and a sweep of the residence in an attempt to locate and arrest Luna.  When considering all facts and circumstances known to the officers, they clearly had probable cause to reasonably believe that Luna was within his residence.

## III.  CONCLUSION

For the reasons stated above, Partida's Motion to Suppress (Filing No. 27) is **DENIED.**

**SO ORDERED.**

8

Date: <u>10/6/2016</u>

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

James J. Bell
PAGANELLI LAW GROUP LLC
james@paganelligroup.com

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov